UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

RAYMOND D. SIGGINS and
SUSAN K. SIGGINS,　　　　　　　　　　　　　　　　No. 13-12716 TR

　　　　Debtors.

BENJAMIN BATES,

　　　　Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　　　　　　Adv. No. 13-1074 T

RAYMOND D. SIGGINS, and
SUSAN K. SIGGINS, individually and
dba Siggins Horse Company,

　　　　Defendants.

## MEMORANDUM OPINION

Plaintiff Benjamin Bates ("Bates") filed this adversary proceeding on September 9, 2013, seeking a judgment from the Court that the amounts owed by Defendant Raymond D. Siggins ("Siggins"), set forth in a state court judgment, are nondischargeable under § 523(a)(2) and/or (a)(6). Before the Court is Defendants' Motion for Summary Judgment on all claims (the "Motion"). Plaintiff filed a response to the Motion (the "Response").

The dispute arose from Siggins' sale of a horse to Plaintiff in November 2009. Plaintiff alleges the horse Siggins sold him was lame. When Plaintiff demanded a refund Siggins refused, instead offering Plaintiff a replacement horse. Plaintiff accepted this horse with reservations. When the horse proved unsatisfactory as well, Plaintiff again demanded a refund and Siggins again refused, instead offering a third horse to replace the second. According to Plaintiff, the third horse was also lame. Plaintiff demanded a refund for the third time and was rebuffed. Plaintiff, not

willing to exchange horses again, returned the horse to Siggins and sued him in state court. The upshot of the lawsuit was entry of a money judgment against Siggins for $13,000 plus interest and attorney fees. Siggins subsequently filed bankruptcy, prompting this adversary proceeding.

The Motion is premised on the argument that the agreement between the parties limits Plaintiff's remedy to exchanging horses, not money damages. Because of this limitation, Defendants' argue, Plaintiff's nondischargeability action must fail. Defendants also argue that there is no evidence supporting Plaintiff's fraud allegations, essentially because of *caveat emptor*.

As set forth herein, the Motion should be denied and this adversary proceeding should proceed to trial on the merits.

## II. FACTS[1]

Plaintiff is a very good, very experienced team roper. He wanted to buy a horse to ride in roping competitions. To do so, Plaintiff traveled to New Mexico, visited Siggins' place of business in Ruidoso, and purchased a horse named "IV" from Siggins on or about November 9, 2009. The price was $11,500. At the time of sale Siggins signed a letter written on Siggins Horse Co. letterhead, stating:

> I Ray Siggins sell one ten yr old chestnut gelding to one Mr Ben Bates of Sun City CA. This horse has a freeze brand of a IV on the left hip. This horse is paid in full by ck # 4576. This horse was sold and bought with the guarantee to be free of any vice or soundness issues. The sum of the purchase is 11,500. /s/ Ray Siggins.

At the time of sale IV had pads on her feet. Plaintiff alleges that Siggins told him these pads were there to protect the hooves because the farrier trimmed the hooves too closely. Plaintiff took

---

[1] The Court finds the following facts for the purposes of ruling on the Motion. The findings do not mean that the facts are established in this case. *See* Fed.R.Civ.P. 56(g) and Bankruptcy Rule 7056. All disputed facts must be proven at trial.

- 2 -

delivery of IV but later returned him to Siggins after a veterinarian examined the horse and determined he was lame, not merely tenderfooted from hoof trimming. Siggins refused to refund Plaintiff's money, but instead delivered another horse to Plaintiff.

Plaintiff found the replacement horse unsatisfactory because it "had no withers" so a saddle would not stay on properly, making it unfit for roping competitions.

Plaintiff returned the second horse and asked for a refund. Siggins again refused the refund request. Instead he offered Plaintiff a third horse, a sorrel gelding named Calvin. When Plaintiff took delivery of Calvin, the parties signed an agreement stating:

> I Ray Siggins sell one sorrel gelding branded with U on the right hip. I guarantee this horse to be free from any defect. If for any reason Mr. Bates is not satisfied with this horse he can bring him back and trade him for another one of equal or lesser value. /s/ Ray Siggins; /s/ Ben Bates.

It turned out Calvin had various medical problems, including lameness, and was unfit for team roping. Plaintiff drove to New Mexico with Calvin in tow and demanded that Siggins take him back and give a full refund. Siggins refused.

On August 31, 2010, Plaintiff filed an action against Siggins in New Mexico's Twelfth Judicial District Court, captioned *Benjamin Bates v. Ray Siggins, individually, and d/b/a Siggins Horse Co.,* case no. 1226-CV-2010-00295 (the "State Court Lawsuit"). The case was assigned to Judge Karen Parsons.

The parties settled the dispute on May 31, 2011. Under the settlement, Plaintiff returned Calvin to Siggins, who agreed to pay Plaintiff $13,000 by July 1, 2011. Siggins further agreed that if he did not make the required payment timely, a money judgment of $13,000, plus interest at 10% per month and attorney fees and costs, could be entered against him. The parties signed a Stipulated

Order memorializing the settlement, which was also signed by Judge Parsons and entered in the State Court Lawsuit on June 17, 2011.

Siggins did not pay the $13,000 by the July 1, 2011, deadline. On July 3, 2011, Judge Parsons entered a judgment (the "Judgment") in the State Court Lawsuit. The Judgment stated:

> Judgment is hereby entered in favor of the Plaintiff Benjamin Bates against Defendant Ray Siggins individually and d/b/a Siggins Horse Co. in the amount of $13,000.00 as of July 1, 2011 with interest to accrue at the rate of ten percent (10%) per month. Further, Plaintiff is entitled to collect attorney's fees and court costs necessarily incurred in collecting this Judgment.

Siggins filed a Motion to Set Aside Judgment on August 4, 2011, alleging newly discovered evidence, i.e. that Calvin had become lame while in Plaintiff's possession. Judge Parsons scheduled a hearing on the motion, Siggins failed to appear, and Judge Parsons denied the requested relief. The Judgment is final and nonappealable.

### III. SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and … [must] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In determining whether summary judgment should be granted, the Court will view the record in the light most favorable to the party opposing summary judgment. *Harris v. Beneficial Okla., Inc. (In re Harris)*, 209 B.R. 990, 995 (10th Cir. BAP 1997). To deny a motion for summary judgment, genuine factual issues must exist that "can be resolved only by a finder of fact because they may

reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). A mere "scintilla" of evidence will not avoid summary judgment. *Vitkus v. Beatrice Co.,* 11 F.3d 1535, 1539 (10th Cir. 1993). Rather, there must be sufficient evidence on which the fact finder could reasonably find for the nonmoving party. *See Anderson,* 477 U.S. at 251; *Vitkus,* 11 F.3d at 1539.

IV. ANALYSIS

A. Defendants' Limitation of Remedies Argument.

Defendants argue they are entitled to summary judgment because the relevant Contract[2] limits Plaintiff's remedy to exchanging the horse he bought for another one, so a nondischargeable money judgment cannot be awarded. Motion, pp. 4-6. Defendants say that if Plaintiff is not satisfied with Calvin, he can exchange the horse for another, and that Siggins remains ready, willing, and able to provide a replacement horse. Motion, p. 7. Because this is Plaintiff's sole remedy, the Defendants' argue, the nondischargeability action must fail. There are a number of problems with this argument, rendering it an unsuitable basis for summary judgment.

1. Defendants Did Not Provide a Copy of the Agreement. Despite relying primarily on an argument based on contract language, Defendants did not provide a copy of the alleged contract, in violation of the best evidence rule. For this reason alone, the Motion should be denied. "[T]he traditional best evidence rule proclaims that the writing is the best evidence of its contents, and testimony thereof is inadmissible if the writing is available." *Allen v. W. H. O. Alfalfa Mill. Co.*, 272 F.2d 98, 99 (10th Cir. 1959). *See also* Rule 1002 Fed. R. Evid. Because the discussion of the Contract contained in the Motion would not be admissible at trial the Court cannot

---

[2] The November 9, 2009, letter (the "Letter") and the hand-written agreement signed when Calvin

- 5 -

consider it in relation to summary judgment. *See Mitchell v. Zia Park, LLC,* 842 F. Supp. 2d 1316, 1321 (D.N.M. 2012) (the 2010 amendments to Rule 56 did not change the general position that Rule 56 does not allow a court to consider inadmissible evidence.) However, because the Plaintiff attached the Contract, which appears to be the agreement Defendants rely upon, the Court will address the Motion on the merits.

    2.  <u>The Contract Does Not Provide for Specific Performance</u>. Although Defendants characterize Plaintiff's remedy as one for specific performance, that is not accurate. Rather, the Contract arguably limits Plaintiff's breach remedies to exchanging an unsatisfactory horse for another one of equal value. Limiting a party's breach remedies is a fairly common contract term, but the remedy specified in the Contract is not specific performance. In some ways it is the opposite—if Calvin turned out to be unsatisfactory, Plaintiff would not be able to keep the horse (guaranteed to be free from defects) he bargained for.

    3.  <u>Defendants Ignore the State Court Judgment</u>. However the Contract's breach remedy provision might otherwise have been construed, the rights of the parties were determined by the Stipulated Order (entered June 17, 2011), and the final money Judgment (July 8, 2011). Thus, even if Defendants' argument otherwise has merit, it is foreclosed by the Judgment. The Court holds that the Stipulated Order and Judgment preclude summary judgment based on Defendants' limitation of remedies defense.

 It would violate the *Rooker-Feldman* doctrine for the Court to grant relief inconsistent with the Judgment. *See, e.g., In re Staker,* 525 Fed. Appx. 811, 814 n. 3 (10th Cir. 2013), citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284 (2005) (characterizing the *Rooker-*

---

was delivered (the "Hand-Written Agreement") shall together be referred to as the "Contract."

*Feldman* doctrine as prohibiting "state-court losers" from bringing suit in federal court "complaining of injuries caused by state court judgments rendered before [federal] district court proceedings commenced and inviting district court review and rejection of those judgments."); *Chattanooga Mem'l Park v. Still (In re Jolly)*, 574 F.2d 349, 351-52 (6th Cir. 1978) (holding that a breach of contract claim that had been reduced to judgment "is conclusive and may not be collaterally attacked in the bankruptcy court."). The state court entered a money judgment against Siggins. Defendants argue in the Motion that no such money judgment is appropriate because of the damages limitation provision in the Contract. The *Rooker-Feldman* doctrine dictates that Defendants' argument, a clear collateral attack on the Judgment, must be overruled.

Further, even if the *Rooker-Feldman* doctrine did not prevent the Court from looking beyond the Judgment, the general rule of merger would have the same effect. The Restatement (Second) of Judgments, § 18 (1982), provides in part: "When a valid and final personal judgment is rendered in favor of the plaintiff . . . [i]n an action upon the judgment, the defendant cannot avail himself of defenses he might have interposed, or did interpose, in the first action." The Restatement has been adopted in New Mexico. *See Kepler v. Slade*, 896 P.2d 482, 486 (N.M. 1995). Here, the debt claimed to be nondischargeable is awarded by the Judgment. Siggins cannot relitigate the issues adjudicated in the State Court Lawsuit. Siggins' argument that his only potential liability is to trade horses should have been raised in state court, not here. The merger doctrine prevents Siggins from pursuing such a collateral attack on the Judgment.

      4.      <u>There Are Material Fact Issues Regarding Whether the Remedy Limitation Binds Plaintiff</u>. Furthermore, to the extent the Contract limits Plaintiff's breach remedies, the limitation would be unenforceable if the Plaintiff proves fraud in the inducement. *See Prudential*

- 7 -

*Ins. Co. of Am. v. Anaya*, 428 P.2d 640, 643 (N.M. 1967) ("As a general proposition, rescission is allowed where there has been a misrepresentation of a material fact, the misrepresentation was made to be relied on, and has in fact been relied on"); *Robison v. Katz*, 610 P.2d 201, 206 (N.M. Ct. App. 1980) ("The general rule in New Mexico is that rescission should be granted a party who, in entering a contract, justifiably relied on a misrepresentation of a material fact, irrespective of the good or bad faith of the party making the misrepresentation"); *Sisneros v. Citadel Broad. Co.*, 142 P.3d 34, 40 (N.M. Ct. App. 2006) (citation omitted) ("Misrepresentations by one party as to a writing can make a contract voidable by the other party. In order for this to occur, the recipient of the misrepresentation must show that (1) there was a misrepresentation that was (2) material or fraudulent and which (3) induced the recipient to enter into the agreement, and that (4) the recipient's reliance on the misrepresentation was justified."); Restatement (Second) of Contracts § 164(1) (1981) ("If a party's manifestation of assent is induced by either a fraudulent or a material misrepresentation by the other party upon which the recipient is justified in relying, the contract is voidable by the recipient."). If rescission is granted the remedy would be to place the parties in their respective positions as if no Contract existed. *See Ledbetter v. Webb*, 711 P.2d 874, 877 (N.M. 1985) (rescission is an equitable remedy that seeks to restore the status quo ante)

As Plaintiff states in his Response, "this is a fraud lawsuit, not a breach of contract lawsuit." Response, p. 6. If Plaintiff prevails at trial on his fraud argument, he might not be bound by the Contract terms, even apart from *Rooker-Feldman* and the merger doctrine.

        5.      <u>Dischargeability Would Have to Be Determined Even Under Defendants' Theory of the Case</u>.  Defendants argue they are entitled to summary judgment because Plaintiff's remedy is limited to exchanging horses, and "Defendant is fully intending to perform under the

contract." Motion, p. 7. This argument overlooks the effect of the discharge entered in this case. Under Defendants' theory, the Contract was still in force (despite the Judgment) when Siggins filed his bankruptcy case. If so, the Contract has been rejected. Section 365(d)(1). Rejection of an executory contract constitutes a breach of the contract as of the petition date. Section 365(g). Such a breach gives rise to a claim for damages. Section 502(g)(1). The Court would have to determine the amount of any such claim, *id.*, and whether it was nondischargeable. Section 523(a). Thus, if Siggins had wanted to limit Plaintiff's remedy to exchanging Calvin for another horse, the Chapter 7 trustee would have had to assume and assign the Contract to Siggins. He did not.

Alternatively, Siggins might have attempted to reaffirm his obligations to Plaintiff under § 524(c). Such reaffirmation agreements, however, must be entered into before discharge. Section 524(c)(1). *See also In re Kirk,* 2014 WL 1248040, at *4 (Bankr. D.N.M. 2014).

        B.        <u>Defendants' Assertion that There is No Evidence of Fraud is Without Merit</u>.

Defendants also argue they are entitled to summary judgment because there is no evidence Siggins defrauded Plaintiff. Defendants assert:

> Plaintiff's failure to have these horses examined by a veterinarian was and should be a bar to Plaintiff's recovery especially considering the issue of soundness was raised following delivery of the first horse. Buying a horse is not unlike buying a used vehicle. It is only prudent for one to check the soundness of the product before taking delivery of the same.
>
> …
>
> Plaintiff has had every opportunity to examine each and every horse but failed to do so, even after the issue of soundness was raised. This failure on Plaintiff's behalf cannot support the premise for fraud or misrepresentation under either 11 U.S.C. § 523(a)(2) or (a0(6).

Motion, pp. 4-5, 7.

- 9 -

This argument fails; there are genuine issues of material fact about whether Siggins defrauded Plaintiff. For example, if Siggins knew that both IV and Calvin were lame when he sold them to Plaintiff, or if Siggins lied to Plaintiff about the farrier cutting IV's hooves too short when shoeing him, those facts could be probative of a fraud finding. The Court must hear evidence on these and related issues.

## V. CONCLUSION

Plaintiff asserts that Siggins' debt to him is nondischargeable because of fraud or malicious injury to property. The claim amount has already been reduced to a final money judgment; the only issue is whether Siggins' conduct giving rise to the debt comes within § 523(a)(2) and/or (a)(6). Defendants' limitation of remedies argument fails, given the Judgment, *Rooker-Feldman,* the merger doctrine, and the rejected executory Contract. Defendants' other argument also must be overruled, as Plaintiff's affidavit contains evidence that could support a finding of fraud.

The Court will enter a separate order consistent with this Memorandum Opinion.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered May 6, 2014.

Copies to:

Michael Daniels
P.O. Box 1640
Albuquerque, NM 87103

Ronald Holmes
112 Edith Blvd. NE
Albuquerque, NM 87102